## PYRATE CORPORATION v. SORENSEN et al.

### No. 6138.

Circuit Court of Appeals, Ninth Circuit.

Oct. 27, 1930.

Harold M. Sawyer, Alfred T. Cluff, and Daniel W. Evans, all of San Francisco, Cal., for appellant.

Paul Barksdale D'Orr, Thomas A. Reynolds, and A. L. Abrahams, all of Los Angeles, Cal., for appellees.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The appellant, who will hereinafter be referred to as the plaintiff, entered into a contract with the defendants Sorensen and Dee, who will hereinafter be referred to as the defendants, giving to the defendants the exclusive right to manufacture and sell Pyrate products within the state of California for a period of twelve months from the date of the contract, July 10, 1925, with certain renewal privileges. This proviso of the contract with reference to renewal is the only question involved on the appeal; plaintiff contending that the contract had been renewed and that the defendant broke the contract by refusal to continue thereunder. In order to understand the situation of the parties, it will be necessary to state some of the facts as to which there is no disagreement.

The agreement between the parties may be briefly summarized as follows: The defendants entered into a contract with the plaintiff stating that the plaintiff corporation is exclusive owner of all varieties of cleansing product known and sold under the registered trade-name of "Pyrate"; that the defendants desire to act as exclusive agents for the marketing of the product in the state of California, and in consideration of being granted that right agreed "that they will purchase every twelve months continuation of the within contract, a minimum quantity of 800,000 pounds of the above described product." The contract fixed the price per pound for the product, but provided for a change in cost in accordance with the fluctuations of the market. Plaintiffs were to furnish to the defendants formulas of the special mixtures supplied to them provided that such formulas should remain the property of the plaintiffs, and that "upon the cancellation of the within contract by either party the buyers (defendants) agree to deliver to the seller (plaintiffs) on demand all records of sales of bulk Pyrate and/or special mixtures." Defendants agreed not to engage in any similar or competing business or to use the formulas or information furnished them to further the interests of any similar or competing business. It is also provided: "It is further understood and agreed that buyers (defendants) will conduct and operate their business during the life of this contract under the name of 'Pyrate Products of California.'" The agreement in regard to the term of the contract is as follows:

"It is agreed that this contract is to continue for a period of twelve months from date, with the privilege of renewal for a fur-

ther period of four years, and at the expiration of said second period, for an additional five year period; provided the terms of the within contract have been faithfully performed by said buyers during such previous period."

The contract was modified in writing so as to reduce the minimum quantity agreed to be purchased from 800,000 to 200,000 pounds. The business of selling said product within the state of California was continued by the defendants acting under the name of the Pyrate Products Company of California as therein agreed until September, 1926. The defendants did not at any time give the plaintiff formal notice of intention to renew the contract at the expiration of the twelve months' period, and both parties by their conduct treated the contract as continuing in force until September, 1927, at which time defendants sought to terminate the contract, claiming that it had not been renewed. It is apparently conceded by the parties that the option to renew the contract was with the defendants, and the question is whether they exercised that option. It would seem clear that any conduct of defendants entirely inconsistent with the termination of the lease at the end of twelve months brought to the knowledge of the plaintiff would in effect operate as an election to renew the contract. In this connection it should be stated that the contract itself makes no provision, as is frequently done, for the method by which the parties shall manifest its intent to renew the contract. In June, 1926, the defendants entered into similar sales contracts with sub-agents for portions of California for a period of five years. These contracts were brought to the attention of the plaintiff and actually drawn by one of their employees, but these contracts were not executed by or on behalf of the plaintiff. Their validity depended entirely upon the right of the defendant to give the exclusive agency for five years in the territory in California covered by their blanket agreement for the entire state. It would seem difficult to express more definitely to the plaintiff the intention of the defendants to continue the conduct of the business for at least five years than was thus done by the defendants in executing a contract which could only be valid in the event that such option was exercised. It may be that a mere purchase of supplies by the defendants would not alone constitute a renewal of the contract, even though the prices quoted were those specified in the contract; but here we have in addition to the conduct of the business acts of the defendants entirely inconsistent with any other theory than that the contract was to be continued in force for at least the additional term of four years. We also, in this case, have in addition to that the fact that the defendants continued to operate under the name of the Pyrate Products of California, which they were authorized and required to do under the terms of the contract, which provided that they would "operate their business during the life of this contract under the name of Pyrate Products of California." The continued use of this name after the expiration of the first year was also an indication of their intent to continue their business under and in pursuance of the contract between the parties. The notice of terminating the contract relied upon by the defendants was given in the name of the Pyrate Products of California, and the correspondence between plaintiff and defendants on that subject was addressed to the Pyrate Products of California by plaintiff and was responded to by the defendants in that name. The letter of September 9th serving notice of terminating the contract was signed "Pyrate Products of California, M. J. Dee, L. C. Sorensen." The letter of September 19th discussing the proper interpretation of the contract was addressed to the plaintiff by the defendants signed "Pyrate Products of California, L. C. Sorensen."

There seem to be few reported cases upon the subject of renewals of contracts under similar conditions. The only one called to our attention is by the Supreme Court of New York, Jacob Dold Packing Co. v. Kings County Refrigerating Co., 176 App. Div. 407, 162 N. Y. S. 1035, 1038, wherein it was held that where the privilege of renewal of a contract for refrigeration was not made dependent upon prior notice, the option "was sufficiently exercised by continuing the use of defendant's refrigeration and making payments therefor." This decision was predicated upon Kelly v. Varnes, 52 App. Div. 100, 64 N. Y. S. 1040, which was a contract in relation to the renewal of the lease. Most of the cases cited to us relate to the renewal of leases, and while there is some analogy between the renewal of a lease and the renewal of a contract such as that involved in this case, there is one fundamental difference. In the case of leases we are dealing with an estate in real property, and in such case time and manner of renewal must be determined with relation to that estate. In case of an option for renewal or extension contained in a lease, it has been held that the continued occupancy of the premises after the expiration of the term by the lessee is a sufficient

indication of his election to extend the term for additional stipulated time. Hall v. Willmering (Tex. Civ. App.) 209 S. W. 226, citing Street-Whittington v. Sayres (Tex. Civ. App.) 172 S. W. 775; Tiffany on Landlord and Tenant § 222; Underhill on Landlord and Tenant § 803. In the opinion on re-hearing the court cited additional cases. In Hall v. Willmering the court applied the rule with regard to leases by analogy to the contract there under discussion. In Monmouth County Elec. Co. v. Cons. Gas Co., 83 N. J. Law, 531, 83 A. 900, the Court of Errors and Appeals of New Jersey had under consideration the question of renewal of a contract for furnishing electric current for the fixed period of three years, with an agreement to renew the contract at its expiration "for an additional three years, should the party of the first part desire such a renewal." It is there held that the desire of the plaintiff for a renewal should have been communicated to the party furnishing the current on or before the last day of the original term. While this case is somewhat analogous to the case at bar, the decision is based partly upon the language there used and partly upon the reasonableness of acquiring specific notice from the purchaser to the seller of the electric current. In the case at bar the contract for renewal is to be construed most strongly in favor of the plaintiff. Hall v. Willmering, supra; 2 Elliott on Contracts § 1548; Williston on Contracts, § 620; Rutledge & Taylor Coal Co. v. Mermod, 209 Mo. App. 292, 237 S. W. 849. If therefore the plaintiff is bound by the contract for the additional period of four years by reason of its conduct in connection with that of the defendant, the defendant must also be bound. How can we escape the conclusion that the plaintiff was bound when it had knowledge of and acquiesced in the execution of the contract by the defendants, which should only be valid in the event that it was bound by the extension? In view of all the circumstances, and particularly in view of the fact that the parties both treated the contract as still in effect after the date fixed for its expiration unless extended, we must hold that the plaintiff accepted the conduct of the defendant as sufficient to exercise its option and that both are bound thereby.

It is suggested that this view may be inconsistent with the statute of frauds requiring contracts of this nature for a period of over a year to be in writing, but we think that the original contract between the parties satisfies the statute of frauds by reason of the fact that it expressly provided for the term of five years in the event that the defendant manifested a desire that such contract shall remain in force for that period.

The views which we have expressed will necessitate a reversal of the judgment in so far as it denies to the plaintiff such damages as they may have suffered by reason of the breach of the contract by the defendants. Plaintiff has offered evidence tending to show the amount of profits they would derive from the continuance of the contract. These profits are based upon the volume of sales which it was estimated would have occurred had the defendants continued their efforts under the contract. In view of the fact that the contract expressly requires the defendants to take a minimum of 200,000 pounds of Pyrate per annum and the price is fixed in the contract subject to increase or decrease in accordance with the market conditions, it is evident that the plaintiff has suffered some damage by reason of the termination of the contract. The parties have not attempted on this appeal to present a record sufficient for us to determine therefrom the amount of damages, nor to adequately instruct the trial court upon that subject upon a rehearing of that question. Both appellant and appellees seem to contemplate that in the event this court holds that the contract between the parties was extended for four years that the question of damages is a matter for determination by the trial court. We refrain from expressing any further views with regard to the amount or measure of damages.

Decree is reversed, and the action remanded to the trial court for further proceedings not inconsistent herewith.